**GREENWOOD MARKET v. INSURANCE CO. OF NORTH AMERICA.**

District Court, W. D. South Carolina.
March 15, 1929.

Grier, Park & McDonald, of Greenwood, S. C., for plaintiff.

Stephen Nettles, of Greenville, S. C., Joseph L. Nettles, of Columbia, S. C., and Spalding, McDougald & Sibley, of Atlanta, Ga., for defendant.

WATKINS, District Judge. On or about the 9th day of December, 1926, plaintiff applied to one G. G. Dowling, local agent for the defendant, at Greenwood, S. C., and received from him a policy on behalf of the defendant insuring against loss by fire a certain stock of merchandise, store furniture, and fixtures belonging to plaintiff. The policy contained the usual provisions relating to forfeiture in case of change in ownership, incumbrance by chattel mortgage, and nonwaiver by the agent unless in writing. On or about the 19th day of May, 1927, while the policy was in force, plaintiff executed to Bank of Greenwood a chattel mortgage upon the property embraced in the insurance policy. Upon delivery of the mortgage and the insurance policy to the bank, the president of the plaintiff corporation went at once to Agent Dowling's office, informed him of the execution of the mortgage and delivery of it and the insurance policy to the president of the bank, and requested said agent to fix the policy for the Bank of Greenwood in order to protect the bank, to the amount they had loaned, in case of fire. Dowling stated that he would attend to it. In his testimony, which was taken at the trial, Dowling stated that Duckett came to his office, told him that he had placed this mortgage over the stock and fixtures, and asked him to attach the proper mortgage or loss payable clause to the policy, and that he told Duckett that he would do it. Dowling further stated that Duckett told him where the policy was and that his custom was to attend to clauses of this kind right away, and that he intended doing it on this occasion and started to the bank to get the policy when, according to his recollection, some one stopped him; that thereupon he said: "John Sloan (president of the bank) will send that policy in by mail and if he does, I will give it attention; if he does not, I will go over there with the clause." He further stated that thereafter the matter escaped his mind entirely until after the fire. Duckett testified that he supposed the matter had been attended to and did not learn of the omission until after the fire.

There is no dispute as to the above-recited testimony, nor of the further fact that Dowling as agent had been furnished with a supply of riders to be attached to policies for the purpose of permitting what was sought to be done, and that he was vested with full power to preserve policies against forfeiture because of the issuance of chattel mortgages thereon by attaching such riders. There was no limitation upon the authority in that respect as and when these forms were attached

to the policies, but it was his custom and duty *to the insurance company* to notify it of such action, forwarding to it at the same time a duplicate or copy of such rider. After receipt of the rider, the company might elect to cancel the policy or to continue the insurance. It was stated that the custom of insurance companies was to continue the insurance unless the execution of the mortgage was accompanied with suspicious circumstances.

In the instant case, action was brought at law for loss occasioned by fire, which occurred on the 17th of July, 1927. Defendant, among other defenses, alleged that the policy had been avoided by the unauthorized execution of the mortgage above mentioned. In reply, the plaintiff alleged that the omission to attach the appropriate rider had been due to mutual mistake, and asked that the policy be reformed and that the cause be transferred to the equity side of the court to have this issue determined in advance of the trial at law. By agreement of counsel, the evidence upon all issues, both legal and equitable, was heard together, and at its conclusion the court, passing upon the equitable issues, held and ordered that the policy should be reformed in accordance with plaintiff's contention, after which the action at law was submitted to the jury and a verdict found in favor of plaintiff.

The defendant thereupon submitted a motion for a new trial on two grounds:

(a) Under the authorities there can be no reformation on the ground of mutual mistake in a case where the alleged mistake consists in the failure of the agent to keep his oral promise to attach a rider to an existing contract of insurance where the contract (policy) provides that it cannot be altered except by attaching the rider.

(b) The evidence does not show mutual mistake.

In their argument upon the motion, defendant's counsel quote two provisions of the policy, as follows:

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder."

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirement, act or proceeding on the part of this company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless granted herein or by rider attached hereto."

Another section of the policy relating to mortgage interests provides that if loss or damage is made payable in whole or in part to a mortgagee, the policy may be canceled as to such interest by giving to the mortgagee a 10 days' written notice of cancellation.

From the above it is evident that these standard insurance policies contemplate the possibility, I may say the probability, of providing loss payable clauses to mortgagees when the property is incumbered either before or after the policy is originally issued. From the evidence it is clear that such provisions must be made by attaching written or printed forms to the policy itself. The decisive question, therefore, is whether an agent furnished with these forms, which provide for the protection of mortgagees only to the extent of their interests, and empowered to attach such forms without previously conferring with the company, in agreeing to do so is acting within the inhibitions of the above-quoted provisions of the policy. We do not think so. Sections 4088, 4089, and 4090 of the Civil Code of South Carolina 1922 clearly provide that one acting in the capacity in which Dowling acted in the instant case is to be deemed the agent of the insurance company and not of the insured. Section 4090 prohibits insurance companies not incorporated under the laws of this state from making any policy of insurance or any contract of insurance of any kind in this state without the approval of the local agent, who must countersign all policies issued by such companies. Both under these fundamental laws, and as independently shown by the testimony, Dowling was not only empowered without further authority from the company to make the contract set out in the loss payable clause which he agreed to attach to the policy, but he was the only one who could do it. It is true that the company reserved the right to cancel the policy after receiving notice, but until canceled as provided in the policy and disapproved in the manner set out in Dowling's testimony, the contract was valid.

We have carefully reviewed the authorities cited in the elaborate and forceful arguments submitted by counsel for both plaintiff

and defendant, and have also reviewed numerous other cases as well as text-books upon insurance law and equitable reformation of written instruments. Lack of time and stress of other duties prevent any analysis or elaborate review of the authorities in this opinion. Upon consideration of all the authorities in connection with the facts of this case, my conclusions may be summarized as follows:

1. The federal courts have with general unanimity approved the validity of covenants of insurance policies of the character set out, precluding or limiting the power of agents generally to abrogate or waive conditions of forfeiture in any other manner.

2. Against such provisions many of the state courts have in law cases admitted oral evidence of knowledge and conduct of local agents to establish facts to avoid forfeiture on the ground of waiver or estoppel. This, however, is in conflict with the decisions of the United States Supreme Court.

3. Some of the state courts, notably Massachusetts and Maine, have gone to extreme limits to deny the reformation of policies in equity, even in cases of fraud or mutual mistake, on the ground that oral testimony is inadmissible to alter or vary the terms of the written agreement. These decisions, however, as shown by Pomeroy (Equity Jurisprudence [4th Ed.] title Mistake, §§ 866, 867, at pages 1772 to 1784. See particularly page 1778, and note pages 1780, 1781), are not only based on very narrow and partial equitable jurisdiction conferred by state statutes, but are in conflict with the overwhelming weight of authority.

4. While enforcing strictly the nonforfeiture provisions of policies in actions at law, the United States Supreme Court has given full recognition to the right of reformation of this class of contracts in all proper cases falling under the head of equitable relief.

5. In granting the equitable relief of reformation, the Supreme Court, as in the Nebraska case cited by counsel, accords to state statutes defining the status and authority of resident agents full force and effect.

6. Both under the South Carolina statutes and under the authority given Dowling as shown by the undisputed testimony, he was the alter ego of the insurance company not only in the execution and delivery of the policy but also in attaching the rider or loss payable clause here in question. Corporations act only through authorized agents, and it is undisputed that Dowling's power to do what he agreed to do was absolute and exclusive. And equity regards that as done which ought to have been done.

7. But it is earnestly urged by defendant's counsel that the contract as originally issued was complete, and that while a mutual mistake or omission in it might have been corrected in a suit for reformation, this could not apply to a subsequent agreement because of the inhibitions of the policy and because the rights of the parties were fixed by the policy itself. The weight of that contention necessarily depends upon the extent of the agent's authority. If his agreement had been to waive the forfeiture without attaching the rider, even under the authority invested in him under the South Carolina statutes, defendant's contention might be deemed well founded. It is not necessary here to determine, and we do not determine, the validity of the contention in such case. Dowling's agreement to attach the rider did not transcend his authority. He had full, unquestionable, and exclusive authority on behalf of the company to save the policy from forfeiture by fulfilling his agreement, and it was never within his intention or understanding that the policy was or should be forfeited. He gave no notice of his inadvertent neglect, and there was no offer to return what in case of cancellation would have been unearned premium. To allow a forfeiture in such case would not only result in great injustice, but would be in conflict with the basic principles of equitable relief and of the attitude of courts generally towards forfeitures.

While refusing the motion for a new trial, the term and jurisdiction of the court will be extended for a period of 30 days for the purpose of settling a bill of exceptions in the event defendant desires to take an appeal, and a separate order to that effect will be filed herewith.

Whereupon, after due consideration, it is ordered and adjudged that the motion for a new trial be, and the same is, hereby overruled and dismissed.