### CLIFTON MFG. CO. v. UNITED STATES.
### No. 1498.

District Court, W. D. South Carolina.
Jan. 31, 1933.

W. A. Sutherland, E. Clem Powers, and Joseph B. Brennan, all of Atlanta, Ga. (Sutherland & Tuttle and Jones, Evins, Powers & Jones, all of Atlanta, Ga., and Horace L. Bomar, of Spartanburg, S. C., of counsel), for plaintiff.

Joseph A. Tolbert, U. S. Atty., of Greenville, S. C., and W. F. Evans, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

WATKINS, District Judge.

### Statement of Issues.

While the pleadings in this case are voluminous, the real issues may be stated more briefly. The statement of facts hereinafter set out will serve to present the issues in such further detail as may be necessary to their complete understanding.

The complaint was filed on October 13, 1931. It demands judgment against the defendant for the sum of $162,805.61 and interest, as a refund of taxes claimed to have been illegally assessed and collected after such assessment and collection had been barred by the statute of limitations (See 26 USCA § 1065 and note). As to the amount, plaintiff now claims only the sum of $57,265.76, with interest from October 15, 1926, at the legal rate, and there seems to be no dispute that, if entitled to recover at all, this is the correct amount. The collection in question involved assessments imposed upon plaintiff for the fiscal year ending March 31, 1918. The first returns were filed on May 28, 1918, and the second return was filed on April 29, 1919, after the passage of the Revenue Act of 1918 (40 Stat. 1057). Anticipating a defense founded thereon, plaintiff set out in its complaint the filing of certain waivers with the Commissioner of Internal Revenue, the first being under date of June 25, 1923, a number of others being filed from time to time up to and including the date of November 18, 1925. An inspection of these dates show that the first waiver was signed more than five years after the filing of the original returns, but within less than five years after the filing of the second return. It is the contention of plaintiff that the filing of the first returns began the tolling of the statute of limitations, and that the right of assessment and collection had become barred before the filing of the first waiver. It is further contended that these waivers were obtained from the plaintiff through fraud and misrepresentation upon the part of the government's agents; that they were obtained and signed under mutual mistake; that the officer of the corporation, who signed as treasurer or as president and treasurer, had no authority in law to execute such waivers; and the court is asked in its equitable jurisdiction to declare said waivers void and ineffective. It will be observed that plaintiff raises no question as to the correctness of

the amount assessed and collected, but only as to the right of the government, at the time it was done, to assess and collect, the sole issue being (if the waivers were invalid) whether defendant's right to assess and collect had been barred by the statute of limitations. Defendant interposes a general denial of liability, and sets up as a bar to recovery the fact that a claim for abatement had been filed with the Commissioner of Internal Revenue by the plaintiff on July 7, 1921, and also alleges validity of the several waivers described in the bill of complaint, and their sufficiency to avoid the statute of limitations. Defendant also maintains that the tolling of the statute of limitations did not begin until after the filing of the second return on April 29, 1919. At the hearing, defendant interposed a motion to dismiss, substantially upon the ground that the plaintiff had itself alleged the execution of the waivers above referred to, which, if valid, barred the right of recovery; and that the court is without jurisdiction in this action to grant the equitable relief requested. The motion was also grounded upon the contention that plaintiff is seeking, through the means of equitable relief, to cancel a written instrument in order to obtain the benefit of the statute of limitations, which would be in violation of the maxim that "he who seeks equity must do equity." From the foregoing, it will be seen that the issues thus presented to the court are as follows:

I. Upon the motion to dismiss: Does the court have jurisdiction to determine the validity or cancellation of the waivers?

II. Upon the merits:

(a) Does the statute of limitations begin to run from the filing of the first returns on May 28, 1918, or from the filing of the second return on April 29, 1919?

(b) The validity and effect of the waivers.

The action is brought under section 24 (20) of the Judicial Code (28 USCA § 41 (20), the amount claimed being in excess of $10,000; and, since it is admitted that the collector of internal revenue, who made the collection, is now out of office, there is no question of the court's jurisdiction under the provisions of the Tucker Act.

Statement of Facts.

So far as the testimony goes, there is no substantial, if indeed any, conflict. Both sides have filed requests for findings of fact and of law, but the difference in the requests as to facts relates not so much to a difference of opinion of what took place as to the effect of what was done. From the testimony and certain stipulations filed by counsel, I find the facts to be as follows:

The plaintiff is now and was, at all times hereinafter referred to, a corporation chartered under the laws of the state of South Carolina, with its principal place of business in the Western District of said state, and during all such times J. C. Evins was and is the president and treasurer thereof. As such executive officer, he filed the various returns and waivers herein mentioned, conducted the negotiations and correspondence with the government, made payments of taxes from time to time, and filed the claims for abatement and refund herein referred to. Plaintiff filed its original returns under the Revenue Act of 1917 (40 Stat. 300) for the fiscal period of April 1, 1917, to March 31, 1918, on May 28, 1918, showing a tax due of $171,002.96. This tax was paid on September 11, 1918. After the passage of the Revenue Act of 1918, said corporation filed, on April 29, 1919, an additional return, covering the period ending March 31, 1918, showing an additional tax due of $50,638.75, which was paid, $13,690.65 on March 21, 1919, and $36,948.10 on September 15, 1919. In June, 1919, an additional assessment of tax was made for said fiscal period and paid by the corporation on June 16, 1919. An additional deficiency assessment of tax for said fiscal period was made against the corporation in May, 1921, and paid, as follows: $1,124.-35, March 15, 1923; $1,665.96, September, 1926; $99,629.95, October 15, 1926; and an interest charge of $31,147.32. On September 4, 1926, an additional deficiency assessment was made against the corporation in the sum of $37,313.46, and interest to the amount of $1,174.61. In reference to this assessment, a deficiency letter was mailed to taxpayer on May 26, 1926, and no appeal was taken to the Board of Tax Appeals. The tax was paid on October 15, 1926. On July 7, 1921, the corporation filed a claim for abatement for $80,800.12 of the amount of $102,-420.26, which was assessed in May, 1921. This claim was not allowed, but the date of disallowance is not disclosed by the evidence. This, however, appears to be immaterial, since both sides concede that the portion of the tax covered by the claim for abatement cannot, in any event, be recovered by plaintiff, because of the provisions of section 611 of the Revenue Act of 1928 (26 USCA § 2611), as construed in Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415, and there is, therefore, no dispute as to the amount which plaintiff is entitled to recover, in the

event that its claim is allowed by the court. Claim for refund to the amount of $175,000, for the period ended March 31, 1918, was filed by the corporation on September 20, 1928, assigning, among other reasons for basis of the claim, that the amounts collected in October, 1926, were barred by the statute of limitations applicable thereto. The claim was rejected on October 24, 1929. On June 21, 1923, the Acting Deputy Commissioner of Internal Revenue wrote to the plaintiff a letter, of which the following is a copy:

(Letterhead, Treasury Department.)

"June 21, 1923.
"Clifton Manufacturing Company, Clifton, South Carolina.

"Sirs: Reference is made to the proposed additional assessment in the amount of $74,876.74, for the year 1918, as outlined in office letter dated March 5, 1923.

"You are advised that in order that the interests of the Government may not be jeopardized, pending consideration of your brief dated March 16, 1923, you are hereby requested to fill out and properly execute the enclosed form of waiver and return the same to this office within thirty days from the date of this letter.

"In your letter of transmittal, reference should be made to IT:CA:M-2-RJR-2112-11.

"Respectfully,
"J. G. Bright,
"Acting Deputy Commissioner.
"By [Signed] John G. Remey
"Chief of Section.
"Enclosure: Form of Waiver."

In reply thereto, the following letter was sent the Commissioner of Internal Revenue:

(Letterhead, Clifton Manufacturing Company.)

"June 25, 1923.
"Commissioner Internal Revenue,
Washington, D. C.

"Dear Sir: Replying to yours of the 21st. inst. IT:CA:M-2-RJR-2112-11, as requested we have signed and herewith return waiver covering the adjustment of additional taxes assessed against Clifton Mfg. Co. for the year 1918.

"Very truly yours,
"[Signed] J. C. Evins, Pres."

This letter inclosed waiver, of which the following is a copy:

"(872M)
"IT:CA:M-2
"2112:RJR 11 Clifton, S. C.
 "June 25, 1923.

"Income and Profits Tax Waiver

"In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, Clifton Mfg. Co., of Clifton, S. C. and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said Clifton Mfg. Co. for the years 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909. This waiver is in effect for one year from the date it is signed by the taxpayer.

"Clifton Mfg. Co. [Seal] Taxpayer
"By [Signed] J. C. Evins, Pres. & Treas.
"[Signed] D. H. Blair, Commissioner

"If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed."

Subsequent correspondence followed and other waivers were executed by the plaintiff under dates of January 19, 1924, December 4, 1924, and November 18, 1925. On each of these waivers appeared, underneath the signatures of the parties, as in the one hereinabove set out, the following: "If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed." It will be observed that the waivers were signed in each instance in the name of the corporation, by J. C. Evins, as treasurer or as president and treasurer, and the seal of the corporation was in each instance affixed.

The court finds that the act of 1918 and the departmental regulations required the filing of a new and independent return in the instant case; that material changes in the law were effected by said act, and additional information was required to be furnished, and that the corporation was required by said act to pay additional taxes. We also find that the tolling of the statute began with the filing of the second return on April 29, 1919, and not on May 28, 1918, upon the filing of the first returns, as claimed by plaintiff. While

512

this disposes of the ground upon which plaintiff bases its claim of misrepresentation and mutual mistake, and in effect also its claim of lack of authority of its president and treasurer to sign the waivers, the court finds as a fact that there was no such misrepresentation, mutual mistake, or lack of authority as to invalidate the waivers, even if signed after the expiration of the statutory period. Whether the statutory period had or had not expired when the first waiver was signed was sufficiently uncertain to create a divergence of views. One of the main issues in the instant case is whether, under the law, the statute began to run from the date of filing of the first returns or from the date of filing of the second return. The issues have been much clarified by later decisions of the Supreme Court, particularly Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676; Florsheim Bros. Dry Goods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; and Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335. If a mistake existed, it was a mistake principally as to a question of law, of which both sides are presumed to have had knowledge, and one side was as familiar with the facts as the other. It is evident that both the representatives of the Treasury Department and of the plaintiff corporation affixed their signatures to the waivers under the impression that the statutory period of limitation had not expired. Certain of those representing the Commissioner of Internal Revenue testify that, under the policy of the government, a waiver would not have been requested if it had been understood that the statutory period of limitation had expired; and Mr. Evins, president and treasurer of the plaintiff corporation, testified that he had no authority to sign, and would not have signed, if he had understood such fact to exist. Certainly there was no positive misrepresentation of fact on the part of the government's representatives, and it is evident to my mind that, entertaining the view that he did, the Deputy Commissioner would have proceeded immediately with an effort to levy and collect such taxes as his investigation indicated were due, in order to protect the government's interests, unless the waivers had been filed. The claim for abatement had been filed on July 7, 1921, and, whether the claim had then been disallowed or not, plaintiff evidently regarded it as meritorious, and equally, with the Deputy Commissioner, desired the benefit of complete and proper investigation of records, in order to arrive at the amount justly due.

I further find that the waivers signed by its president and treasurer were valid and binding upon the corporation. Such further discussion of the facts and findings thereon, as may be necessary to this opinion, will appear subsequently herein, in connection with my conclusions upon the law of the case.

Conclusions of Law.

I. Motion to Dismiss:

As stated above, this action is brought under section 24 (20) of the Judicial Code (28 USCA § 41 (20), which grants jurisdiction to the courts in the following language: "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court; and of any suit or proceeding commenced after the passage of the Revenue Act of 1921, for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or sum was collected is dead or is not in office as collector of internal revenue at the time such suit or proceeding is commenced. * * * All suits brought and tried under the provisions of this paragraph shall be tried by the court without a jury."

Particular attention is directed to the expression "would be entitled to redress against the United States, either in a court of law, equity, or admiralty," and "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive *or in any manner wrongfully collected.*" (Italics ours.)

The defendant earnestly stresses the contention that the issues of fraudulent misrep-

resentation and mutual mistake are equitable in their nature, and only cognizable by a court of equity, and that the court is, therefore, without jurisdiction to consider these issues in the instant action; and that, since the waivers, which are those sought to be avoided and canceled, are set up in the complaint, the action must be dismissed, it being undisputed that the waivers, if valid, would preclude plaintiff's recovery. We think that the language of the statute so plainly confers upon the courts the requisite jurisdiction to determine equitable issues as to leave no room for argument upon that particular point. This, however, does not of itself dispose of the question of the right of the court in the instant case to determine these equitable issues. Federal courts have, from the beginning of our jurisprudence, been careful to preserve the distinction between actions at law and suits in equity. Formerly, it was an unbending rule in these courts that legal and equitable issues must be tried in separate suits or actions. In South Carolina the rule was early adopted that when, in the course of a proceeding at law, an equitable issue arose necessary to the predetermination of a legal issue, the action at law would be stopped and a separate issue made up in equity and first tried. Conversely, where, in a suit in equity, a legal right came into controversy, triable as of right by a jury, the suit in equity was suspended and an issue at law made up for trial by a jury. In each case, upon the determination of the special issue, the case was restored to the proper docket and proceeded to final judgment. The order in which these issues should be tried is to be determined by the judge as a matter of discretion. W. B. Boyle Co. v. Automobile Ins. Co. of Hartford, Conn., 168 S. C. 63, 166 S. E. 886. The rule in the United States courts required, in cases where it developed in the course of the proceeding that the case was improperly brought, either at law or in equity, that the whole proceeding be dismissed and a new suit or action filed. In recent years, while still jealously maintaining the distinction between suits in equity and actions at law, the practice has been much liberalized, particularly under the new rules in equity, promulgated in 1913, Rules 22 and 23 (28 USCA § 723) being applicable to the case at bar. The practice has been further liberalized under the Act of March 3, 1915, 38 Stat. 956, Judicial Code § 274a (28 USCA § 397). In the case of Twist v. Prairie Oil & Gas Co., 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297, the court discusses the distinction that must be maintained between suits in equity and actions at law. In that case it was held that waiver is permissible because the objection to equity jurisdiction does not go to the power of the federal courts but to the merits. Rule 22 makes it plain that it was the purpose of the Supreme Court so to liberalize the practice as to avoid the former drastic rule, which required the dismissal of a cause mistakenly brought in the wrong jurisdiction. When taken in connection with the section of the Judicial Code above referred to, it is evident that it is not now intended to limit transfers under this rule to cases in which the bill itself might fail to contain sufficient allegations to present a case for equitable relief, but also to enable this to be done where issues subsequently raised by the pleadings, or where the admitted or established facts of the case, as they might be presented in the cause, show the real nature of the case to be one at law. It must be remembered that the remedial provisions of the statute should be liberally construed, both to prevent the unnecessary prolonging of litigation and to prevent the dismissal of causes upon too technical grounds. In the case of Colleton Mercantile & Mfg. Co. v. Savannah River Lumber Co., 280 F. 358, 365 (C. C. A. 4), the late Judge Charles A. Woods stated the rule with unusual clearness. That was a suit in equity to enforce specific performance of a contract. A claim of title to the land had been interposed by one W. B. Gruber, and he was joined as a defendant, in order to remove from the title the cloud cast upon it by his claim. In discussing Equity Rule 23 (28 USCA § 723), the court said that "this rule means that, where in an equity case a matter triable by jury arises, the court shall not refuse to try it, and shall not go through the form of sending it to the law side of the court, but shall determine it according to all the principles applicable—one of which is the right of trial by jury. Under rule 22, if the case is essentially a law case improperly brought in equity, it must be transferred to the law side. Under rule 23, if the case, looked at as a whole, is an equity case, but a question arises in it triable by jury, a jury trial is held to settle the legal issue without transfer. When the legal issue has been settled by the verdict of the jury, the court adjudicates the equitable issues in the light of the verdict." The foregoing case was quoted with approval in the case of Van Wagenen v. A. L. Reed Co. et al. (D. C.) 287 F. 145, at page 147. In the case of Southern Ry. Co. v. City of Greenwood et al. (D. C.) 40 F.(2d) 679, this court had occasion to make an elaborate investigation of the authorities, and the foregoing questions were fully discussed

in the opinion. There an action in equity was brought to enjoin trespass upon lands or rights of way claimed by the railroad company. The defense raised the question of paramount title, and claimed the right of trial of that issue by jury. This right is guaranteed both by the Constitution and statute laws of South Carolina. Since the issue of paramount title was determinative of the right of complainant to recover, we held that the plaintiff's request for a jury trial must be granted, and the case was subsequently determined by a verdict of a jury. A case more nearly similar in its general aspect to the one at bar is the case of Greenwood Market v. Insurance Co. of North America (D. C.) 34 F.(2d) 53. In that case suit was brought upon an insurance policy and the defense interposed certain provisions of the policy which were prima facie sufficient to avoid the claim. Plaintiff filed a reply, asking for a reformation of the policy by the attachment of a certain rider showing defendant's consent to the execution of a chattel mortgage by the plaintiff, without which consent plaintiff could not recover. After the filing of this pleading, plaintiff filed with the court a motion to have made up an equitable issue, and to have the policy reformed, and asked that the cause be transferred to the equity side of the docket for the hearing of this issue. No amendment of the pleadings was necessary for that purpose, and, after careful consideration, the motion was granted. By consent of counsel, the testimony was taken upon the whole case. The court decided the equitable issue in favor of plaintiff, and thereupon submitted the law issues to the jury. The old practice of having separate judges for the courts of law and chancellors presiding over courts of equity has long since been abandoned in most jurisdictions, and now, particularly in the District Courts, the same judge acts in both capacities. In the instant case, the plaintiff anticipated the defense of and set out the waivers and challenged their validity upon the grounds mentioned. The answer also set up the waivers and relief upon them as barring the right of recovery. Under the statute conferring jurisdiction in such cases as the one at bar, the court has jurisdiction both at law and in equity. The issue presented is one properly cognizable by the court, and we think it is within the power of the court, as also its duty, to determine the issue in the instant case. It might of its own motion, if such course were necessary, transfer the cause to the equity side of the court for the determination of that issue, and, since it is a prerequisite to determination of the other

issues, we do thus take equitable cognizance, and the issues thus raised will be decided upon their merits. While there is some confusion and apparent conflict in the decisions, the weight of authorities is in accord with what we have heretofore said, and particularly as related to the statute under which this action is brought. United States v. Milliken Imprinting Co., 202 U. S. 168, 26 S. Ct. 572, 50 L. Ed. 980; William Cramp, etc., Co. v. United States, 239 U. S. 221, 36 S. Ct. 70, 60 L. Ed. 238; United States Cartridge Co. v. United States, 62 Ct. Cl. 214.

The motion to dismiss is therefore overruled.

## ■ II. Upon the Merits:

(a) *Does the statute of limitations begin to run from the filing of the first returns on May 28, 1918, or from the filing of the second return on May 29, 1919?*

In the determination of this question, it is necessary to understand the provisions and requirements of the act of 1918, and, by comparison, to arrive at a proper understanding of the changes and amendments thereby effected in and over former revenue laws. The first returns had reference only to the provisions of the act of 1917, and were in compliance therewith. The act of 1918 was retroactive in its provisions, and for that reason the return filed in pursuance of that act overlapped a portion of the period covered by the former returns. In view of the language of certain of the decisions cited by plaintiff's counsel, it is important to consider, not only what the law required, but what was actually done in compliance therewith. Without attempting to recapitulate in exact words the changes effected by the latter act, a review of the act will show the following (we quote substantially from defendant's brief): In the act of 1918, personal service corporations were placed in the same category with partnerships; new excess profits taxes were provided for; a differentiation was made between invested capital and income; a provision was made for taxation of appreciation in property values; in the administration of trusts and estates, distinction was made between income and capital gains; a differentiation was made between earned and unearned income; a change was made in reference to returns, and taxes paid based on a fiscal year; consolidated returns were provided for; returns were changed in reference to United States bond and tax exempt securities required to be listed; a reasonable allowance was made for obsolescence; amortization is provided for; contributions to a spe-

cial fund for vocational rehabilitation is provided under credits allowed; exemptions in reference to married persons and for dependents are allowed for the first time; and a complete restatement of the terms relating to invested capital is made.

With these changes in view, section 336 of the act of 1918 (40 Stat. 1096) provides, inter alia, as follows: "That every corporation, not exempt under section 304, shall make a return *for the purposes of this title.*" (Italics ours.) It is true that section 205 (a) of the act (40 Stat. 1061) makes reference to returns for the fiscal year beginning in 1917 and ending in 1918, and provides for the crediting or refunding of taxes paid thereunder in accordance with another section of the statute. We are of opinion, however, that the purpose of this section was to define rights of the taxpayer and the method of computing the tax, and not intended in any way to abrogate the necessity of making the returns which the act required. The later return filed under the act of 1918 was required under the law, not only for the purpose of disclosing certain additional information material to the assessment of taxes in accordance with provisions of the act, which involved substantial changes in the law, but also to show, in the event that all requisite information was disclosed under the first returns, that such was a fact. Without such showing, both positive and negative, the Commissioner would not have been in position to make the levy, and it was in compliance with the foregoing requirements that the later return was tendered by the taxpayer and accepted by the government. It may be assumed for the purposes of this opinion that the Commissioner was vested with the privilege in certain cases, after an inspection of overlapping returns filed under the act of 1917, to determine that additional returns were not necessary and to waive the requirement that they should be filed. Evidently such a view was largely determinative of the decisions of the courts, particularly in construing returns filed in pursuance of the act of 1918, but covering a period retroactively affected by the act of 1921 (42 Stat. 227). In those cases, although filed prior to the passage of the latter act, the Commissioner accepted the returns as sufficient, and made assessments and collected taxes thereon. In the instant case, we think that the facts are sufficient to show that the first returns contained insufficient information for the proper determination of the amounts to be assessed. Certain it is that the new return was required and furnished and formed the basis of the taxes subsequently levied and collected. In this connection, it should be observed that whatever additional taxes were provided by the act of 1918 for the period beginning January 1 and ending March 31, of that year, were assessed under that act, and were not and could not have been assessed or collected until the passage of the act in February, 1919. To hold, therefore, that the statute began to run upon the filing of the first returns would result in reducing the period of limitation to considerably less than the five years expressly provided by the statute. We must assume that Congress did not and could not have contemplated or intended such result. While it is true that the returns filed in 1918 were, when filed, complete returns and sufficient in law to fix the period from which the limitation should run, this related of necessity only to such taxes as could be assessed or collected under the act of 1917. It was not and could not have been contemplated that future retroactive taxes would be levied for the period mentioned, and that a provision of limitation should preclude their collection. The absurdity of such presumption becomes manifest in view of the right of Congress to fix the limitation for any period—four years, one year, or even six months. In such case the assessment and collection might have been barred when the statute was enacted. We cannot conceive such intention on the part of Congress. It is assumed that an intention of that body to curtail the limitation as affecting a particular case would be expressed in plain and unmistakeable language.

Among the cases cited in plaintiff's brief are the following: Myles Salt Co. v. Commissioner, 49 F.(2d) 232, 233 (C. C. A. 5); Isaac Goldman Co. v. Burnet, 60 App. D. C. 265, 51 F.(2d) 427; Valentine-Clark Co. v. Commissioner, 52 F.(2d) 346 (C. C. A. 8); Adams, Cushing & Foster, Inc., 19 B. T. A. 89 (dismissed by C. C. A., First Circuit, upon confession of error).

In the first case mentioned, a tax return was filed for the fiscal year ending in 1921, before the enactment of the 1921 Revenue Act. After the passage of the act, no new or amended return was filed or requested. No change was effected by the new act pertaining to the taxpayer's liability, except that by the new act it was deprived of a credit of some $2,000 on its net income, thus increasing its tax about $35. It was held that the return which would date the beginning of the limitation period and lack of which would prevent limitation is one made in substantial conformity to the law which required it. The court held that a return which starts the running of the statute "must purport to cover the entire

period involved, and must show the items of gross income, deductions, and credits of the taxpayer with such definiteness as to permit an assessment of the tax, if accepted as correct." In that case the return was retained by the Commissioner, together with the money paid on it, and later on an audit of it was had, in 1923, without request for any amendment of it. Under the circumstances shown, we have no reason to question the correctness of the court's decision as limited to the exact point in issue.

Likewise, in the case of Isaac Goldman & Co. v. Burnet, supra, the issues involved an overlapping return for the twelve-month period ending April 30, 1921. In that case the court held: "We can find no provision in the Revenue Act of 1921 which requires the filing of a new return from taxpayers using the fiscal year basis, in cases where a return had been duly filed under existing law, except, perhaps, *in those cases in which, under the 1921 act, new and different taxes are assessed or a new basis of taxation provided, as is the case in some few instances not here involved.*" (Italics ours.) The court held further: "In this instance, the taxpayer had filed the return it was required to file under the then prevailing law, and paid the tax. The new law was in all respects the same as the old so far as its tax liability was concerned. The repetition of the figures already filed would have been a wholly vain and useless proceeding." This case followed the ruling laid down in the case of Myles Salt Co. v. Commissioner, supra. It is evident from the opinion that only one return was filed, and such expressions in the opinion as relate to the running of the statute from the date of the first return, if a second return had been filed, is mere obiter.

The case of Valentine-Clark Co. v. Commissioner, supra, also arose under the provisions of the act of 1921, and related to an overlapping return for the fiscal year ending January 31, 1921. This case cites as authorities and follows the two cases above discussed. As in the other cases, it is necessary to consider the exact facts surrounding the case, in order to appreciate the distinction between it and the case at bar; and the final decision arrived at, in order to be properly appreciated, must be considered in connection with the reservations set out in the opinion.

While it is true that the returns filed in 1918 were entitled to be and were accepted as complete returns under the provisions of the law then existing, they did not and could not contemplate subsequent enactments involving all or any portion of the period covered. Upon the passage of the act of 1918, requiring returns for the purposes of the act, a new situation was created, and the returns, so far as that act was concerned, became merely tentative. We think the principles laid down in the case of Florsheim Bros. Dry Goods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542, are applicable here. The act of 1918 did make certain provisions relating to overlapping returns. It did not declare that such returns should be considered as complete returns for the period embraced in the year 1918 for the purposes of the act, but still required such additional returns for the purposes of the act as might show all requisite information; and it did not provide merely that additional information should be furnished, but required in express language a return for the purposes of the act. Therefore, in whatever sense the returns of 1918 were to be considered in assessing subsequent tax, they must be regarded as only tentative returns. We deem it unnecessary to review and analyze the cases cited in defendant's brief. The case of United States v. Updike (C. C. A.) 32 F.(2d) 1, affirmed 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984, contains certain analogies to the case at bar, and the reasoning supports the views hereinbefore expressed. The case of Davis Feed Co. v. Commissioner, 2 B. T. A. 616, is directly in point, and likewise accords with these views. See, also, Whitney Bodden Shipping Co. v. United States (Ct. Cl.) 52 F.(2d) 1003; Ralston Purina Co. v. United States (Ct. Cl.) 58 F. (2d) 1065. In the last-mentioned case the return was made on November 30, 1918, and, after the passage of the act of 1918, a final return was made on June 16, 1919, and it was held by the court that the period of limitation began to run upon the filing of the last return. The opinion, however, was devoted mostly to other questions than the one at issue. See, also, Holmes, Federal Taxes (1922 Ed.) p. 829; Prentice Hall Tax Service, vol. 3, 1932, Par. 19370, subd. (1).

■■ (b) *Validity and effect of the waivers.*

Assuming that we are correct in holding that the period of limitation began to run from the date of filing the second return, and that the waivers were therefore timely, the questions of fraudulent misrepresentation, mutual mistake, and lack of authority of plaintiff's president and treasurer to sign become entirely moot. The only grounds upon which the validity of the waivers are challenged are based upon the assumption that the limitation provided by statute had ex-

pired. The charges of fraudulent misrepresentation, of mutual mistake in executing the waivers, and of lack of authority of plaintiff's president and treasurer to execute them, are all predicated upon the claim that the statutory period of limitation had expired. No claim is, and we assume that none can be seriously, made that the president and treasurer who signed the returns, the claims for abatement and refund, and who made all payments and conducted all correspondence and negotiations with the government, was without authority in these respects. During all the years since the first returns were filed, he has been in effect the alter ego of his corporation, which has received and accepted the benefit of whatever he did, and which was in position to know, and we must assume did know, acquiesce in, and ratify his acts. He was the chief executive officer of the corporation, under whose seal, in each instance, the waivers were executed, and it was not until in 1928, when the claim for refund was filed, that any question of his authority to sign the waivers was presented to the government; and, even when this was done, it was done by this same officer in the name of the corporation and under its official seal. There is no indication in the evidence that any action by the directors of the corporation authorized the filing of the claim for refund, or any disclaimer by them of the authority of the president and treasurer in signing the waivers. It is evident from the testimony that the whole initiative in this respect was taken by the president and treasurer in the name of the corporation, as in all other transactions and negotiations with the government. The court accepts as true the testimony of Mr. Evins that he did not know at the time of signing the waivers that (if such fact could be conceded to be true) the waivers were filed after the statutory period of limitation had expired, and that he was not vested with authority (an erroneous conclusion of law, however) to execute them under such circumstances. We think it equally true that the representatives of the government, who negotiated for the waivers, were likewise at the time under the impression that the limitation had not expired. The facts, however, upon which the opinions of representatives of both parties were based, were equally available to both sides. We again call attention to the fact that, at the time the first waiver was filed, considerable uncertainty and divergence of opinion existed, both in the minds of the representatives of the government and of the taxpayer, as to the power to execute and the ef-

fect of waivers and as to whether the statutory limitation related merely to the assessment of taxes or to both the assessment and collection. Subsequent statutory provisions operated to clarify these issues, but it was not until years afterward that the Supreme Court decided in the case of Bowers v. New York & Albany Lighterage Company, supra, that the statutory period of limitation applied both to the assessment and collection, and in the case of Florsheim Bros. Dry Goods Co. v. United States, supra, that, where a tentative return was permitted to be filed, the running of the statute did not begin until the filing of the subsequent completed return, and in the case of Stange v. United States, supra, that waivers filed after the expiration of the statutory period of limitation were valid. It must further be remembered that the government, in requesting waivers, was particular to enjoin on the taxpayer that they should be executed by the proper official and under proper authority. The government did rely, and had a right to rely, upon the assumption that these instruments were properly executed under delegated authority. In this view the corporation acquiesced until 1928, a period of approximately five years. Whatever immediate action for levy and collection the government might otherwise have taken was foregone. The corporation not only ratified the authority of its president and treasurer, through whom it acted exclusively at all times, but also from time to time made the payment of additional assessments without demurrer. Whatever may be the rule in other respects, it has been firmly established by the Supreme Court that statutes limiting the time for action by the government in collecting its taxes are to be strictly construed in its favor. DuPont de Nemours & Co. v. Davis, 264 U. S. 456, 44 S. Ct. 364, 68 L. Ed. 788; Bowers v. New York & Albany Lighterage Co., supra. "Taxation," as said by Judge Hutcheson, speaking for the Circuit Court of Appeals of the Fifth Circuit, in Independent I. & C. Storage Co. v. Commissioner, 50 F.(2d) 31, 33, "is eminently practical," quoting from Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. "It has to do with matters the great majority of which ought to be, and usually are, disposed of informally, and, where rights are substantially preserved, defects in form may not defeat them," and courts will not permit a too technical construction "to defeat a waiver voluntarily executed within the scope of the implied powers of him who executed it, and

which was acted upon by the officer of the United States to whom it was addressed." See, also, Florsheim Bros. Dry Goods Co. v. United States, supra; Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; Greylock Mills v. Commissioner (C. C. A.) 31 F.(2d) 655; Moyer v. East Shore Terminal Co., 41 S. C. 300, 19 S. E. 651, 25 L. R. A. 48, 44 Am. St. Rep. 709; Trustees for Ohio & Big Sandy Coal Co. v. Commissioner (C. C. A.) 43 F.(2d) 782; United States v. Southern Lumber Co. (C. C. A.) 51 F.(2d) 956; J. P. Stevens Engraving Co. v. United States (C. C. A.) 53 F.(2d) 1; Concrete Engineering Co. v. Commissioner (C. C. A.) 58 F.(2d) 566; Philip Carey Mfg. Co. v. Dean (C. C. A.) 58 F.(2d) 737.

Counsel for plaintiff earnestly, and, we may add, with considerable force of authority, allege that the implied power of an executive officer to execute waivers under the circumstances surrounding the cases above cited falls short with clothing him with such authority in cases where the right sought to be waived has already been barred by the limitation of the statute. In each case, however, the surrounding circumstances must be taken into consideration in determining that issue. To apply the rule in the instant case would require us to declare invalid a waiver executed in accordance with a request addressed to the corporation, stating that "it must be signed by such officer or officers as are empowered under the laws of the state in which the corporation is located to sign for the corporation, in addition to which the seal, if any, of the corporation must be affixed." In view of the fact that the receipt of this request carried notice to the corporation, that the officer who signed had custody of and affixed the seal of the corporation, that he was throughout a long period of years the sole representative of the corporation in all its dealings with the government in making returns, paying taxes, filing claims for abatement and refund, and that the corporation knowing, as it must be presumed to have known, of all these facts and of defendant's reliance upon the waivers, acquiesced in what was done, and accepted the benefits that arose or were expected from such reliance thereon —in view of all these facts, the corporation must conclusively be presumed to have ratified what was done by its president and treasurer. The validity of the waivers is therefore sustained.

For the reasons hereinbefore set forth, the plaintiff is not entitled to a recovery, and the complaint must be dismissed.