## ISAAC GOLDMANN CO. v. BURNET, Com'r of Internal Revenue.

### No. 5142.

Court of Appeals of District of Columbia.
Argued June 1, 1931.
Decided June 29, 1931.

Frederick Schwertner, of Washington, D. C., for appellant.

Sewall Key, S. Dee Hanson, C. M. Charest, and Stanley A. Suydam, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant kept its books and made its tax returns on the fiscal year basis. Its taxable year 1920–1921 was the twelve months' period ending April 30, 1921. On July following, it filed its return under the provisions of the Revenue Act of 1918 (40 Stat. 1057), showing net income of $82,964.70 and a resulting tax liability of $15,830.26. Gross income was properly shown, the schedules required by Treasury regulations were attached, and the honesty and good faith of the return is not questioned. More than four years later the Commissioner made a deficiency assessment.

On November 23, 1921, the Revenue Act of 1921 was passed, and its provisions made retroactive as of January 1 (section 263). 42 Stat. 227, 271. The only effect of the 1921 act, so far as it concerned appellant's tax liability for the period January 1 to the end of appellant's fiscal year—April 30, 1921—was to limit proportionately appellant's right to a specific exemption, allowed under the 1918 act but not allowed under the 1921 act, to the period prior to January 1. The result of this was to make appellant liable, under the new act, for a small additional tax. The Commissioner claims that this fact made necessary the filing by appellant of a new return, and that its subsequent filing of an amended return, pursuant to Treasury Decision 3220, should either be treated as the only return for the fiscal year period in controversy, or else appellant should be regarded as never having filed any return, and that, in either case, the deficiency assessment would be within the limitation period.

Treasury Decision 3220, issued the latter part of 1921, was designed to correct a practice apparently then more or less general on the part of taxpayers in using "appreciated" values in determining invested capital, and required, from such as had, an amended return within ninety days. The bulletin confined the requirements of the return to such additional information only as should be necessary to show the correct values to redetermine the amount of tax to be assessed. In obedience to this bulletin, and for the purpose only of correcting the item of invested capital as shown in the former returns, appellant, still claiming the 1918 exemption, filed on January 14, 1922, an amended return, and the question which we have to answer is whether the four-year period of limitations began to run with the filing of the original return in July, 1921, because if it did not, the additional assessment is valid. The Board held, following Hutchinson Co. v. Commissioner, 14 B. T. A. 367, 8, that because the 1921 Act abolished the $2,000 exemption, appellant owed additional taxes under the provisions of that act, and, inferentially at least, since it owed additional taxes, it owed likewise the duty of filing a return with specific reference to the 1921 act, and that, until it did so, the limitation did not begin to run.

In this conclusion, we find ourselves unable to agree. We can find no provision in the Revenue Act of 1921 which requires the filing of a new return from taxpayers using the fiscal year basis, in cases where a return had been duly filed under existing law, except, perhaps, in those cases in which, under the 1921 act, new and different taxes are assessed or a new basis of taxation provided, as is the case in some few instances not here involved. The Commissioner himself realized the confusion and waste inevitable if the returns already made were wholly disregarded and new ones required, and, in Treasury Decision 3310, demanded new returns from taxpayers who had, under the 1918 act, made returns for the fiscal year ending during 1921 only in those cases in which the taxpayer was sub-

ject to specific additional taxes under the 1921 act. The purpose of this ruling, obviously, we think, was to provide a new return only in those cases where, under the provisions of the latter act, a liability for other or additional taxes was created through a change in the basis of computation, necessitating other information or new figures to allow the Commissioner to determine the tax liability under the act.

In this instance, the taxpayer had filed the return it was required to file under the then prevailing law, and paid the tax. The new law was in all respects the same as the old so far as its tax liability was concerned. The repetition of the figures already filed would have been a wholly vain and useless proceeding. The elimination of the part of the exemption not allowable after January 1 was a simple computation appearing from the returns filed, and the adjustment of this item to conform to the new law needed neither explanation nor new returns. The new act provided the occasion, and the return furnished the basis, and the act itself imposed on the Commissioner, section 250 (b), Revenue Act 1921, the duty of examination to the end that the correct tax should be ascertained. The retroactive provisions of the 1921 act present no novelty, for the 1918 act itself replaced retroactively the 1917 act. Under the provisions of the 1918 act, the tax was increased over that exacted under either the 1916 or 1917 act, but, under its provisions as to filing returns on the fiscal year basis, the Commissioner ruled (Treasury Decision 2797) that the new return required was satisfied by inclusion only of the items embracing the additional tax, and spoke of the former returns, i. e., those filed before the act was approved, as original returns, and the additional returns required as supplemental or amended returns, and, while we do not invoke this use of words as foreclosing the question or as controlling, we nevertheless think it clearly reflects the real situation, and that, in this aspect, the returns filed by appellant were, especially in view of the admission that they were in all respects honestly believed to represent the true state of appellant's liability, valid returns and not a nullity. The case turns, we think, upon this: If the original returns filed by appellant were, as the Board apparently thought, a nullity, then, obviously, the deficiency assessment was in time, but if, on the contrary, they were valid returns susceptible of amendment by the Commissioner in the ascertainment of the correct tax, or requiring only a corrected re-

turn in eliminating that portion of the exemption which was abolished by the later act, then, equally obviously, the deficiency assessment was made too late. It was conceded, in the opinion of the Supreme Court in Florsheim Brothers v. United States, 280 U. S. 453, 462, 50 S. Ct. 215, 218, 74 L. Ed. 542, that the filing of a return, though defective or incomplete, is "sufficient to start the running of the period of limitation; and that the filing of an amended return does not toll the period." It was likewise held in Willingham Loan Co. v. Commissioner (C. C. A. 5) 36 F.(2d) 49, that the statute begins to run whenever the taxpayer has filed returns with the Commissioner which show facts upon which the proper assessment for the taxable period may be made. See also Thomas v. United States (D. C.) 22 F.(2d) 1000. The Board of Tax Appeals has also held that this is the rule. See Appeal of National Refining Co. et al., 1 B. T. A. 236; Appeal of New York Trust Co., 3 B. T. A. 583; Lancaster Lens Co. v. Commissioner of Internal Revenue, 10 B. T. A. 1153.

To say that the original return filed by appellant in this case is no return, though filed in strict conformity to the law then prevailing, is, we think, wholly incorrect. To call the return which it later filed to conform to a ruling of the Department—a thing in itself wholly unresponsive to anything in the 1921 act—a new return, wholly unrelated to the other, is, we think, equally incorrect. Appellant, under the method which it had adopted with the consent of the Department, was required to file its returns within three months after the expiration of its fiscal year, and to pay its tax. If it had failed to do either, it would have made a default subjecting it to penalty. If it had filed a dishonest report, it would have been subject to still further penalty. As it happened, it did precisely what the law, as it then was, required it to do, and now to say that, because of the retroactive provisions of the new act, what it did was a nullity, is, it seems to us, without justification or support. If more was required, it was supplementary and not original, and hence, as the Supreme Court said, did not toll the statute. We do not mean to say that the Commissioner might not have required the filing of additional returns to make those already filed conform to the new law, but such new returns, if filed for that purpose, would, as we think, have relation to the original return, and the latter, rather than the former, would be the starting point for the limitation.

The precise question here involved was likewise involved in Myles Salt Co. v. Commissioner (decided by the Fifth Circuit C. C. A., April 21, 1931) 49 F.(2d) 232, and it was decided there, as we think correctly, that the original return established the period from which the limitations began to run.

Reversed.