## ZELLERBACH PAPER CO. v. HELVERING, Commissioner of Internal Revenue (two cases).

## NATIONAL PAPER PRODUCTS CO. v. SAME.

### Nos. 7209–7211.

Circuit Court of Appeals, Ninth Circuit.

Feb. 28, 1934.

John Francis Neylan and J. Paul Miller, both of San Francisco, Cal., for petitioners.

Sewall Key and Francis H. Horan, Sp. Assts. Atty. Gen., for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Petitioners seek a review of the decision of the Board of Tax Appeals sustaining deficiency tax assessed upon the incomes of the petitioners for their taxable year ending April 30, 1921. A consolidated return was filed by the Zellerbach Paper Company and its affiliated corporations, the National Paper Company, and the A. S. Hopkins Company, on July 16, 1921, while the Revenue Act of 1918 (40 Stat. 1057) was in force and before the enactment of the Revenue Act of 1921 (42 Stat. 227), which was made retroactively effective to January 1, 1921. Tax was fixed against each of the corporations on the consolidated return. This consolidated return showed a gross income of $5,826,652.14, credits and deductions claimed of $5,067,846.02, net income of $758,546.17. The original return is before us and we summarize its contents in the language of the petitioners' brief:

"The return is on United States Internal Revenue Service Form 1120; it is supported by complete detailed schedules totalling over fifty pages, including the following, stated in consolidated form and separately where necessary, for the parent company and its subsidiaries:

"Balance sheets;
"Analyses of surplus accounts and reconciliations thereof;
"Details of gross income and deductions;
"Schedules of depreciation;
"Lists of dividends received;
"Details of liberty bond exempt interest;

"Schedules showing adjustments of book balance sheets for income tax purposes;

"Copies of journal entries affecting the foregoing adjustments;

"Schedules showing the computation of invested capital;

"Schedule of inadmissible assets;

"Inventory certificates."

The Commissioner's audit of the return attached to the deficiency letter covers 29 pages of the transcript and shows net income for the Zellerbach Paper Company of $774,423.89, an increase of net income of $242,185.60, and an increase of tax of $64,024.37; a net income of $355,297.11, an increase of tax of $31,141.52, for the National Paper Products Company, and a net income of $10,700.61 and an increase of $1,688.70 for the A. S. Hopkins Company.

The petitioners allege that no changes in their return were made necessary by the Revenue Act of 1921 (42 Stat. 227) other than the change in the $2,000 exemption. This allegation was denied and the Board of Tax Appeals made no finding thereon, but did find that the return filed showed an exemption of $2,000 to which the petitioners were not entitled under the Revenue Act of 1921 for the four months of the taxable year in the calendar year 1921.

The sole question presented is whether or not the deficiency notice of May 11, 1928, was too late.

The Revenue Act of 1926 (44 Stat. 9) in force at the time the notice of deficiency was mailed provided that an income tax imposed by the Revenue Act of 1921, or any prior act, must be assessed within four years after "the return" was filed. The only return made by the taxpayer for its taxable year ending April 30, 1921, was that filed July 16, 1921.

The question submitted to us has been decided against the contention of the Commissioner by two Circuit Courts of Appeals [Myles Salt Co. v. Commissioner (C. C. A. 5) 49 F.(2d) 232; Valentine-Clark Co. v. Commissioner (C. C. A. 8) 52 F.(2d) 346, and by the Court of Appeals of the District of Columbia, Isaac Goldmann v. Burnet, Commissioner, 60 App. D. C. 265, 51 F.(2d) 427]. Nevertheless the Commissioner declines to accept these decisions and the Board of Tax Appeals has again sustained the position of the Commissioner. The Attorney General asks us to sustain the Commissioner and the Board of Tax Appeals frankly looking to a conflict of decision which will enable him to invoke the jurisdiction of the Supreme Court to settle the conflict in favor of the Commissioner. The question thus presented is one that must be determined by us according to our own judgment with due consideration of the weight that should be attached to prior decisions of courts of co-ordinate jurisdiction.

We will first develop the case as we see it and then comment somewhat briefly upon the cases cited above in which the express question has been decided.

### What is a return?

Notwithstanding the importance of the question in the administration of the income tax provisions of the Revenue Acts the meaning of the word "return" has never been legislatively defined, and hence the courts have been required to define the term as applied to specific cases presented to them. It is clear from the provisions of the Revenue Acts that the return required from the taxpayer must show his gross income, the deductions and credits, and his net income, within the meaning of those terms as defined in the act itself (Revenue Act 1921, § 239 (a), 42 Stat. 259; see Florsheim Bros. Drygoods Co. v. U. S., 280 U. S. 453, 50 S. Ct. 215, 217, 74 L. Ed. 542). All these terms are flexible and have been changed by almost every Revenue Act. It should be observed that "gross income" is quite distinct from "gross receipts" and that deductions therefrom permissible by law in estimating the net income are quite distinct from the taxpayer's expenditures, or outgo. The Revenue Acts expressly require the return to show the deductions from the gross income allowed by the law (section 239 (a), Revenue Act 1921) to determine the taxable net income. The petitioners in the case at bar do not contend that their return shows either the "deductions" allowed by the Revenue Act of 1921 or the "net income" as fixed by that act, but they do claim that the return they made July 16, 1921, did show the gross revenue, the deductions therefrom, and the net revenue. under the Revenue Act of 1918 (40 Stat. 1057) in force at the time the return was made, and that their failure to show the net income in accordance with the subsequently enacted Revenue Act of 1921 was not their fault because it was impossible to know what the Revenue Act of 1921 would require. This must, of course, be conceded, but the question remains, Did Congress, in requiring a return for the purpose of levying a tax under the Revenue Act of 1921 showing the deductions therein allowed, intend to adopt as sufficient a return theretofore filed which did not show the deductions as

therein authorized and provided and did not purport to do so? Was such a return under the Revenue Act of 1918 a return "under this Act" within the meaning of the Revenue Act of 1921 which set the statute of limitations running against the Commissioner? And was it "*the* return under the Revenue law of 1921" within the meaning of the limitation provisions of section 277 (a) (2), of the Revenue Act of 1924 (26 USCA § 1057 note), or within the meaning of section 277 (a) (2) of the Revenue Act of 1926 (26 USCA § 1057) which was in force at the time the deficiency assessments were levied and which are here involved? To thus state the question is to answer it, and the obvious answer is no. But there is a complication due to the fact that the income tax provisions of the Revenue Act of 1921 passed November 23, 1921, are made retroactive to January 1, 1921, and the petitioners' return was filed after that date. We believe, however, that this is a false quantity in the matter for if by relation of the Act of 1921 to a date prior to the filing, the petitioners' return can be said to be a return "under the Act" the fact that it did not comply with the act (not yet passed) and did not conform to its requirements (not yet known) show that it could not be a return "under the Act" within the meaning of the new Revenue Act requiring other and different statements than were contained in the return on file. It might be said that by the retroactive provisions of the Act of 1921 the return filed by the taxpayer before the act was passed was a return, after it was passed, but not that it was a return "under the Act," because it did not conform to or comply with the act.

The Commissioner rendered a decision March 6, 1922 (T. D. 3305), requiring the taxpayers who had filed a return for the taxable year 1921 (that is, any fiscal year ending in the calendar year 1921) to file a "new return" where under the Revenue Act of 1921 an additional tax was required. This was in accord with his practice under prior revenue acts, particularly when the Revenue Act of 1917 was replaced by the Revenue Act of 1918 (T. D. 2797). In the latter case the rule (T. D. 2797) referred to the return filed under the Revenue Act of 1917 (40 Stat. 300) as the "original return" and the return required by the decision as an "amended return."

▆ It is clear from what has been stated that the Revenue Act of 1921 required a return from the petitioners stating, among other things, their deductions, and that the rule of the Commissioner also required a return from the petitioners. They made no such return. It is thought that there is some significance in the use by the Commissioner of the terms "original" return, and "new return" in the decision requiring a "new return" and that therefore the "original return" should be regarded as "the return," or the return "under the Act," within the meaning of the limitation provisions of the Revenue Act of 1921, § 250 (d), 42 Stat. 265, the Revenue Act of 1924, § 277 (a) (2), 26 USCA § 1057 note, and the Revenue Act of 1926 § 277 (a) (2), 26 US CA § 1057 (a) (2). These terms are wholly unknown to the Revenue Acts. The fact that the Commissioner happened to refer to the return required by the new act as a "new" return, or as an "amended" return is wholly without significance in determining the statute of limitations fixed by Congress in the act. In this connection the decision of the Supreme Court in Florsheim Bros. v. United States, supra, is significant. The Commissioner called for a "tentative return and estimate of corporation income and profits taxes and request for extension of time for filing return" on form 1031T. In holding that this was not a "return" within the meaning of the Revenue Act, the court made clear that the name given by the Commissioner was not of great significance in determining its legal effect. We quote from that opinion as follows:

"We are of opinion that the filing of the document known as Form 1031T, duly executed, did not start the running of the period of limitation. Form 1031T is not an instrument expressly provided for in the act. It is not in the nature of a 'list,' 'schedule,' or 'return,' commonly required by tax statutes. It was an invention of the Commissioner designed to meet a peculiar exigency. * * * As Form 1031T made no reference to income, or to deductions or credits, it could not have been intended as the return 'stating specifically the items of * * * gross income, and the deductions and credits'—the return required to satisfy the statute."

In considering the question as to whether or not the Revenue Act of 1921 required a return from those whose taxable year ended in 1921, it is important also to consider the provisions of section 205 (a), 42 Stat. 232, providing the method by which the taxpayer should make a return "for the fiscal year beginning in 1920 and ending in 1921." This section of the statute required the taxpayer to estimate his gross revenue and his net revenue for his taxable year in accordance with the terms of the Revenue Act of 1918 (40 Stat. 1057) and to again estimate his gross income and his net income for the taxable year un-

der the provisions of the Revenue Act of 1921. He was required to estimate the tax by taking eight-twelfths of his income estimated under the Revenue Act of 1918 taxed at the rates fixed by the Revenue Act of 1918, and four-twelfths of the tax on the net income estimated under the Revenue Act of 1921 at the rates provided in the Act of 1921, and his tax for his taxable year was the sum of these two amounts. The Revenue Act of 1921 expressly provides that this tax shall be "his tax *under this title* for the taxable year 1921." (Italics ours.) It is clear then that, although the tax for that portion of the taxable year in the calendar year 1920 may be the same that it would have been under the Revenue Act of 1918 and the tax for that portion of the taxable year in the calendar year 1921 may be the same as it would have been under the Revenue Act of 1921, the provision for the method of taxation for the fiscal year 1920 and 1921 is fixed by the Revenue Act of 1921, and the tax is levied under the latter act, that is, to quote the terms of the statute, "under this title." The importance of this method of estimating the net income and the tax thereon is at once apparent when it is noted that the income of the taxpayer may have been actually received in a manner entirely disproportioned to the ratio fixed by the Revenue Act of 1921. The fact that the Revenue Act of 1921 continued in full force and effect the Revenue Act of 1918 until January 1, 1921, made it proper for Congress to enact this special provision for the taxation of those taxpayers whose returns were made for a taxable year ending in 1921, for otherwise it might very properly be contended by the taxpayer that his income actually received under the law of 1918 should be taxed under that law and his income actually received under the Revenue Act of 1921 should be taxed under that law.

A somewhat similar situation arose under the Revenue Act of October 3, 1917 (40 Stat. 300). The Commissioner of Internal Revenue, by Art. 61, Reg. 33, required a return from a corporation which was dissolved prior to the passage of the War Revenue Act of October 3, 1917, which was subject to a tax imposed by the retroactive Act of October 3, 1917. The taxpayer contended that as it had filed a return under a law in existence at the time the return was filed this return started the running of the statute of limitations for making the assessment under the new act. Under these circumstances the District Court held that the return made in compliance with the law in existence at the time the return was filed was not such a return as was required by the Revenue Act of October 3, 1917, and regulations thereunder, although it is expressly provided by the Act of October 3, 1917, § 212 (40 Stat. 307), that "all provisions of Title I of such Act of September eighth, nineteen hundred and sixteen, as amended by this Act, relating to returns, * * * are hereby made applicable to the tax imposed by this title." This decision was sustained by the Circuit Court of Appeals of the Eighth Circuit, December 1, 1925, Updike v. U. S., 8 F.(2d) 913. This was followed by decision to the same effect in U. S. v. Updike (D. C.) 25 F.(2d) 746, which was sustained by the Circuit Court of Appeals of the Eighth Circuit in Updike v. United States, 32 F.(2d) 1, and by the Supreme Court in 281 U. S. 489, 50 S. Ct. 367, 368, 74 L. Ed. 984. The Supreme Court did not find it necessary, however, to pass on the question as to whether or not the return filed under the prior law was a return within the meaning of the Revenue Act of 1918 which fixed the limitation for assessment at five years after the return under prior Revenue Acts. In that regard Mr. Justice Sutherland, speaking for the court, said:

"In accordance with the claim of the government, the court below held that there was a failure to file a return within the meaning of paragraph (a). See, also, Updike v. United States (C. C. A.) 8 F.(2d) 913. We assume without deciding the correctness of that view and consider the case accordingly."

The Court of Claims in Ralston Purina Co. v. United States, 58 F.(2d) 1065, had occasion to consider a similar question with relation to the effect of the repeal of the Revenue Act of 1916 and succeeding Revenue Acts by the Revenue Act of 1918 approved February 24, 1919. That court held on the authority of numerous decisions of the Board of Tax Appeals and of the decisions of the courts in the Updike Cases above referred to, and of its own decision in Whitney Bodden Shipping Co. v. United States (Ct. Cl.) 52 F.(2d) 1003, that the return filed June 16, 1919, after the enactment of the Revenue Act of 1918 was "the return" for the taxable year ending in 1918, and that the return of November 30, 1918, which was filed prior to the enactment of the Revenue Act of 1918 was not "the return" which started the statute of limitations running.

Judge Watkins, District Judge for the Western District of South Carolina, in a similar case (Clifton Mfg. Co. v. U. S., 3 F. Supp. 508) affected by the enactment of the Revenue Act of 1918, held that the statute of

limitations began to run on the filing of the second return on April 29, 1919, after the enactment of the Revenue Act of 1918 and not from the filing of the first return on May 28, 1918, for the taxable year before the enactment of the Revenue Act of 1918.

We will not attempt to repeat in this opinion the course of reasoning adopted by the Court of Claims in its two decisions above cited (Whitney Bodden Shipping Co. v. U. S., supra, Ralston Purina Co. v. U. S., supra) nor of Judge Watkins (Clifton Mfg. Co. v. U. S., supra). It is sufficient for our purposes to state that that reasoning is in the main applicable to the effect of similar provisions in the Revenue Act of 1921 as related to the superseded Revenue Act of 1918 and the regulations thereunder. In this connection it should be borne in mind that the Revenue Act of 1921 changed the method of determining the gross income and the proper deductions therefrom and therefore changed the method of determining the net income. Consequently, in order that the taxpayer's return should show the gross income and the deductions therefrom according to the Revenue Act of 1921 it was essential that the taxpayer should state the same according to the method laid down in the new act. This was the return required by the act. It happened in the two instances dealt with by the Circuit Courts of Appeals [Myles Salt Co. v. Commissioner, 49 F.(2d) 232, supra, and Valentine-Clark Co. v. Commissioner, 52 F.(2d) 346, supra], and by the Court of Appeals of the District of Columbia [Isaac Goldmann v. Burnet, Commissioner, 60 App. D. C. 265, 51 F.(2d) 427], that the only change in the net income of the taxpayer was that resulting from the repeal of the $2,000 exemption given by the Revenue Act of 1918 and repealed by the Revenue Act of 1921. The effect of this change under the provisions of the Revenue Act of 1921 was to increase the net income for the period in the calendar year 1921. It was accordingly held in these cases that the Revenue Act of 1921 did not clearly provide for a new return for taxable years ending in the calendar year 1921 and that the decision of the Commissioner requiring a return in all cases where there was an increased amount of tax under the Revenue Act of 1921 was a recognition of the return already filed as an "original return" and that the "new return" showing additional tax was something supplementary or amendatory to that return and consequently the statute of limitation begun to run from the time of the filing of the "original" return and not from the time of filing the new return. These deci-

sions are largely predicated on the proposition that the Commissioner knew the amount of the deduction authorized by the law of 1918 and repealed by the law of 1921, and that the method of apportioning that deduction was fixed by law, and that the net income for the taxable year 1921 could be readily computed, and thus the small additional amount of tax required by the Revenue Act of 1921 be readily ascertained.

In this connection it should be again observed that the Revenue Act of 1921 expressly required a return. That the return required was to show the allowable deductions and that the return on file did not comply with the requirements of the Revenue Act of 1921 in that respect, but instead showed the deductions authorized under the law of 1918. Not only did the Revenue Act of 1921 require a return showing deductions allowed by that Revenue Act, but the Commissioner expressly required a return in all cases when the tax was increased by the Revenue Act of 1921. The intention of the Commissioner to require a return under the Act of 1921 is clearly expressed in the decision requiring a "new return" in case an additional tax is imposed. We have already said that the fact that the Commissioner referred to the return required as a new "return" is not very significant in our opinion, for the Revenue Act required a return and the fact that the Commissioner called such a return a new return is not decisive or persuasive on the question of the legislative intent in starting the statute of limitations running when "the return" is filed. It should be noted also that under the uniform practice of the Department under all the revenue laws, as shown by the forms provided by the Department for such returns, a practice which is recognized by the various revenue laws themselves, one of the functions of the return is to fix the amount of the tax which the taxpayer pays contemporaneously with the filing of the return. We will deal with that subject more at length in the companion case (C. C. A.) 69 F.(2d) 857. It is fairly obvious that in requiring a return where the tax was increased it was the purpose of the Commissioner to provide a basis for the payment of the additional tax before the Commissioner was in a position to himself assess the tax. If Congress expressly provided for a return by the taxpayer for its fiscal year 1920–1921 as it clearly did, we do not see how the taxpayer can insist that a return filed by it before the Revenue Act of 1921 was enacted and which did not comply with the Revenue Act of 1921 started the running of the limitation under

the Revenue Act of 1921 for making the assessment under that act, nor do we see how the phraseology of the decision of the Commissioner which expressly required the filing of a return can be held to excuse the filing of a return, on the theory that he adopted a return theretofore filed when that return is impliedly repudiated by the decision which expressly requires a new return in lieu thereof as a sufficient basis for an assessment of the tax under the Revenue Act of 1921. In determining the responsibilities and duties of the Commissioner and the taxpayer with reference to the return it should be recognized that there are millions of tax returns on file with the Commissioner, many of them no doubt as complicated as that of the petitioner's. Congress has repeatedly recognized that it sometimes takes years to make an adequate and complete investigation of the taxpayer's return and to make an assessment thereon. Where the new revenue law changes the method of determining the net income by changing the method of determining the gross income or the amount of the deductions therefrom allowed in ascertaining the net income, a construction of the law which would make the period of limitation for the making of the assessment depend upon whether or not there is a change in the taxable base of the particular taxpayer whose return is under consideration would put the whole question as to when the statute of limitation would run in a state of great uncertainty. It would render it impracticable for the Commissioner to know in a given case when the period of limitation would run, for to determine that question would require as careful an examination of the return as would be necessary to assess the tax.

From the standpoint of the Commissioner the requirement of an additional return where there is an additional tax was both reasonable and necessary. From the standpoint of the taxpayer no hardship was imposed upon him by such a requirement. He is presumed to know the provisions of the new Revenue Act and is therefore presumed to know that the act required a return in accordance with its provisions; that the act required an additional tax, and that the Commissioner in such a case had required a new return. If he chose to file a return referring to and incorporating his return already filed, the making of a new return would be quite as simple for the taxpayer as the computation of the tax would be for the Commissioner. Such a return was made in exactly that fashion in the companion case, to which we will refer more particularly in the course of our decision in that case.

We think the really serious question involved in the matter of returns under the new act for the taxable year 1921 is not whether the Commissioner had a right to require a new return under the Revenue Act of 1921, the act itself required it, or whether he intended to do so, as he clearly did in the case at bar, but whether he had a right to excuse taxpayers from making a return under that law as he attempted to do where the statute expressly required such a return, that is, where there was no increase of tax. That question, however, is not involved here and we need not consider it.

We conclude that the taxpayer has failed to file "the return" required to start the statute of limitations running against the making of an assessment. It is conceded that the amount of the tax is correctly stated in the deficiency notice of the Commissioner, and that the same is justly due if the time has not expired for making the assessment.

The decision of the Board of Tax Appeals is affirmed.