## NATIONAL PAPER PRODUCTS CO. v. HELVERING, Commissioner of Internal Revenue.

## ZELLERBACH PAPER CO. v. SAME.
### Nos. 7140, 7141.

Circuit Court of Appeals, Ninth Circuit.
Feb. 28, 1934.

John Francis Neylan and J. Paul Miller, both of San Francisco, Cal., for petitioners.

Sewall Key and Francis H. Horan, Sp. Assts. Atty. Gen., for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit. Judge.

Petitioners seek a review of an order of the Board of Tax Appeals affirming a deficiency assessment for income taxes. The sole question presented by the record is whether or not the assessment was too late.

On July 15, 1925, the petitioner made a return for its fiscal year ending April 30, 1925, filing a consolidated income tax return on behalf of itself and its subsidiaries, the National Paper Products Company and the Sanitary Products Corporation. The question is whether or not this return started the period of limitation for making an assessment under the Revenue Act of 1926 (44 Stat. 9). It is alleged and is conceded "that said return was filed in strict compliance with the Revenue Act of 1924 then in force and effect and that said return was neither false nor fraudulent." This return showed a net income of $1,266,992.39 and a tax thereon computed by the taxpayer at the rate of 12½ per cent. as provided in the statutes of 1924 (section 230 Revenue Act 1924, 43 Stat. 253, 282 [26 USCA § 981 note]), amounting to $158,374.05. This tax was paid in four installments of $39,593.51, the first on July 15, 1925, and the last on April 16, 1926. On February 26, 1926, the Revenue Act of 1926 was passed, by the terms of which the tax on the net income of corporations was increased for the calendar year 1925 to 13 per cent. of the amount of the net income (44 Stat. 9, 39, § 230 (a), 26 USCA § 981 note), an increase of ½ of 1 per cent. On February 28, 1926, the Commissioner of Internal Revenue issued his decision No. 3843 requiring the filing of a new return by a corporation which had filed a return for the fiscal year ending in 1925 where such corporation was required to pay an additional tax by the Revenue Act of 1926. We quote the rule as follows:

"To Collectors of Internal Revenue and others concerned:

"Any corporation which has filed a return for a fiscal year ending in 1925 and paid or become liable for a tax computed under the Revenue Act of 1924, and is subject to additional tax for the same period under the Revenue Act of 1926, must file a new return covering such additional tax on or before May 15, 1926. Payment of the additional tax may be made at the time the return is filed or, if installment payments are desired, such installments must be paid at the time they would be due if based upon a return for the fiscal year ended February 28, 1926."

The petitioner came within the scope of this decision. After the promulgation of the Treasury Decision No. 3843 as above set forth, a copy of same was mailed to the petitioner by the Collector of Internal Revenue at San Francisco, Cal. requesting that the filing of an amended income tax return as provided for therein, be given immediate attention. In pursuance of this decision and request, on May 14, 1926, the taxpayer filed a new return with the Collector of Internal Revenue at San Francisco. It insists, however, that this return is a mere amendment of the previous return, or supplement thereto, and is not "the return" within the meaning of the Revenue Act of 1926 relating to limitation of the period of assessment (section 277 (a) (1) Revenue Act 1926, 26 USCA § 1057). The blank furnished by the Department of Internal Revenue for the purpose of this return is in the usual form of corporate return for the fiscal year 1925 and in making the return the petitioner left blank all the spaces showing the amounts and sources of gross income and the deductions therefrom authorized by the Revenue Act of 1926, and in lieu of such information stated the net

income for the year ending 1925 to be $1,-266,992.39 in conformity with the return theretofore filed on July 25th under the Revenue Act of 1924. The taxpayer, in computing the tax in the return of May 14, 1926, in conformity with this form of return, estimated the tax for the period from April 30, 1924, to January 1, 1925, eight months, at 12½ per cent. to be $105,582.70, and for the four months beginning January 1, 1925, and ending April 30, 1925, estimated at 13 per cent., as $54,903. The tax for the taxable year of petitioner thus estimated by the taxpayer was $160,485.70, which was $2,112.65 more than the taxpayer had already paid upon his estimate of the tax under his return of July 15, 1925. A check for this latter amount accompanied the return. The deficiency letter of October 10, 1928, showed a total tax of $188,744.65 on the consolidated return instead of $160,485.70 as estimated and paid by the taxpayer. This increased tax was based on a determination that the net income for the taxable year was $1,490,089.30 instead of $1,266,992.39 as fixed by the taxpayer. In the return of May 14, 1926, the tax was computed by the taxpayer on the net income of $1,266,992.39 for 8/12ths of the period at the 1924 rate of 12½ per cent., and at the 1925 rate of 13 per cent. for 4/12ths of the period on the same net income, that is, from January 1st to April 30th. It is also admitted that the net income and the tax thereon was properly determined by the Commissioner in his deficiency letter. It will be observed in this connection that the difference in the amount of tax imposed by the Revenue Acts of 1924 and 1926, ½ of 1 per cent. for ⅓ of a year (⅙ of 1 per cent.) is a comparatively small portion of the deficiency tax determined by the Commissioner in the deficiency letter.

It is claimed that the assessment and collection of the tax is barred by the Revenue Act of 1926 which fixed the limitation for the assessment of taxes (44 Stat. 9, 58, § 277 [26 USCA § 1057]), as follows:

"Sec. 277. (a) Except as provided in section 278 [sections 1058 to 1062 of this title]—

"(1) The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

"(2) The amount of income, excess-profits, and war-profits taxes imposed by the Revenue Act of 1921, and by such Act as amended, for the taxable year 1921 and succeeding taxable years, and the amount of income taxes imposed by the Revenue Act of 1924, shall be assessed within four years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

It will be observed that the deficiency letter was within four years after return filed by the taxpayer July 15, 1925, and was within three years of the return filed by the taxpayer May 14, 1926. The contention of the petitioner is that the tax imposed for its fiscal year 1925 was necessarily imposed under the Revenue Act of 1926 and that therefore the three-year period specified in subdivision (1) of section 277 (a) of the Revenue Act of 1926 applies rather than subdivision (2) of the same section, requiring assessment within four years and that the return filed July 15, 1925, started the three-year period running. The petitioner states its position in its brief as follows:

"The 1924 act was repealed by § 1200 (a) of the 1926 act as of January 1, 1925, with certain unimportant exceptions as noted; the 1918 act was repealed by § 1400 (a) of the 1921 act as of January 1, 1921, with certain unimportant exceptions as noted. As a result of the repeal of the 1924 act by the 1926 act as of January 1, 1925, any further impositions or attempted impositions of taxes for the calendar year 1925, or any fiscal year ending in 1925, are necessarily made under the terms of the 1926 act.

"And likewise, the Commissioner is necessarily limited under the provisions of the 1926 act, to a period of three years after the filing of a return within which to make an additional assessment (or to send out a deficiency letter)."

We agree that the tax here involved was imposed under the Revenue Act of 1926, for reasons which will be now stated.

Section 230, "Title II Income Tax" of the Revenue Act of 1924 (43 Stat. 253, 26 USCA § 981 note) which fixes the rate of corporate income taxes, above referred to, is expressly repealed by the Revenue Act of 1926 (§ 1200 (a), 26 USCA § 1a note). Where the taxable year ended in 1925, the Revenue Act of 1926 provided for the imposition of the tax as follows:

"Sec. 207. (a) If the taxpayer makes return for a period beginning in one calendar year (hereinafter ·in this subdivision called 'first calendar year') and ending in the fol-

lowing calendar year (hereinafter in this subdivision called 'second calendar year') and the law applicable to the second calendar year is different from the law applicable to the first calendar year, then his tax *under this chapter* for the period ending during the second calendar year shall be the sum of: (1) the same proportion of a tax for the entire period, determined under the law applicable to the first calendar year and at the rates for such year, which the portion of such period falling within the first calendar year is of the entire period; and (2) the same proportion of a tax for the entire period, determined under the law applicable to the second calendar year and at the rates for such year, which the portion of such period falling within the second calendar year is of the entire period." (Italics ours.) 26 USCA § 938 (a).

It will be observed that the law expressly states that the taxpayer making the return for a taxable year ending in 1925 shall have his tax fixed "under this title." The result of this provision of the Revenue Act of 1926 (§ 207 (a) is that if there has been a change in the method of ascertainment of *the net income* the tax thereon would be increased or decreased. It follows that if either the gross income is increased by the new method of computation fixed by the Revenue Act of 1926 or the permissible deductions therefrom to ascertain the net income are decreased, in either event the net income or taxable base is increased for the four months beginning January 1, 1925, and ending April 30, 1925. There were changes in the Revenue Act of 1926 affecting both the gross income and the deductions therefrom, but before pointing out some of these changes it should be stated that it seems to be conceded that these changes did not in fact affect this particular taxpayer and that the only change applicable to it was the increased rate of taxation of ½ of 1 per cent., but we are concerned not with the effect on the particular taxpayer, but with the question of whether or not the Commissioner of Internal Revenue was authorized by rule to require the filing of new returns under the act of 1926 and whether a return made in compliance with that rule is "the return" referred to in the Revenue Act of 1926 (§ 207 (a) which limits the period for assessing the tax to three years from the date of the return. It is sufficient for our purpose to point out some of the changes in the Revenue Act of 1926 from the provisions of the Revenue Act of 1924 which affect either the method of estimating the gross income or the allowable deductions therefrom. We find that by the Revenue Act of 1926 (§ 202 (b), 26 US

CA § 933 (b) the method of determining the profit from the sale of the property which had been acquired by the taxpayer prior to March 1, 1913, is changed from the method provided in the Revenue Act of 1924. While the change is obvious from an inspection of the statute, a convenient way to state the effect of the change is by quotation from the report of the Senate Committee on Finance in submitting the revenue bill of 1926 to the Senate. Senate Rep. No. 52, 69th Congress, first session, contained in Senate Rep. 2-484 for that session:

"Section 202 (b): When property was acquired prior to March 1, 1913, the present law provides that in the case of a sale of such property the basis for determining gain or loss shall be cost or March 1, 1913, value, whichever is higher; and also provides that in making adjustments for depreciation, etc., proper adjustment shall be made for depreciation, etc., 'previously allowed.' Owing to the fact that there was no income tax prior to March 1, 1913, in cases where property was acquired prior to that date no depreciation has been 'allowed,' and the taxpayer may receive too large a basis for determining gain or loss. The amendment proposed provides that the deductions for depreciation, etc., to be made in such cases shall be such deductions as were actually sustained with respect to such property, which would include such depreciation as had occurred prior to that date.

"Under existing law in the case of determining gain from the sale or other disposition of property, the cost or March 1, 1913, value of such property is required to be reduced by the amount of depreciation or depletion allowed under prior income tax laws. It has been claimed that the effect of this provision is to allow a taxpayer to elect to take no depreciation or depletion against his annual income and to permit him to write off the entire cost or March 1 value at time of sale. The bill as passed by the House provides that the cost or March 1, 1913, value in the case of sale shall be reduced by the amount of depreciation or depletion allowable under prior income tax acts in computing the gain subject to tax. It is believed that the rule stated by the House bill is the correct rule and that all taxpayers should be required to take proper annual deductions for depreciation and depletion.

"Section 202 (b) (2) as written by the House provides that in no case shall the amount of the reduction of the basis by reason of depletion exceed a depletion deduction computed without reference to discovery val-

ue. Inasmuch as the depletion in the case of oil and gas wells, as recommended by the committee by its amendment to section 204 (c) of the bill, is to be based on a percentage of gross income instead of on discovery value, the committee recommends that section 202 (b) of the bill be amended by inserting a provision that in no case shall the amount of the diminution for depletion exceed a depletion deduction computed without reference to an allowance based on a percentage of gross income." (See to the same effect report of the House Comm. on Ways and Means, p. 5, House Rep. on Public Bills 1-362, 69th Congress, first session.)

This change in the statute might make very great changes in the taxable net income of the taxpayer. For instance, the amount claimed by the petitioner in his return for depreciation resulting from exhaustion, wear, and tear and obsolescence was $558,348.94. The gross profits returned were $5,256,205.-82. The total deductions were $3,597,100.32. The decision of the Supreme Court in Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318, and our own decision therein, 55 F.(2d) 17, indicates the difficulties in estimating the proper amount of deductions for depletion and exhaustion in the case of oil properties and the importance thereof in estimating the tax. It also appears from this report of the Senate Committee on Finance that the reason for imposing the additional tax of ½ of 1 per cent. upon the corporation income was because of the fact that the Revenue Act of 1926 repealed the capital stock tax. Another change from the Revenue Act of 1924 is in regard to the discovery value of oil property. We refer to the report of the House Committee on Ways and Means above referred to at page 6 for a discussion of the reason, purpose, and effect of the change without quoting the same, as it is sufficient for our purposes to call attention to the fact that the Revenue Act of 1926 provides for a different method of estimating discovery depletion in the case of a corporation owning and selling oil property from that provided in the Revenue Act of 1924.

These changes in the method of estimating the net income of the taxpayer for the period beginning January 1, 1925, and the method of estimating the taxpayer's income under the Revenue Act of 1924 for the period beginning April 30, 1924, and ending January 1, 1925, show the necessity of requiring the taxpayer to make the new return under the Revenue Act of 1926 as a basis for fixing the

tax. It is true that in the case at bar it is agreed in effect that the changes we have referred to, and such others as may have been made in the method of estimating the gross income or the deductions therefrom, did not affect the taxable net income of the petitioner for the four-month period in the calendar year 1925, but this fact could only be ascertained definitely by a return showing that neither the gross income shown by the original return nor the net income thereby shown was affected by these changes in the statute, or by an independent examination of the affairs of the taxpayer for that purpose.

We conclude that the tax of the petitioner for the taxable year ending April 30, 1925, was imposed under the Revenue Act of 1926 and, consequently, that the assessment of the tax must be made within three years after "the return" was filed (Revenue Act 1926, sections 207 (a), 230, 286, 26 USCA §§ 938 (a), 981 note, 931 note). The question then resolves itself into this, Was the return of July 15, 1925 or the return of May 14, 1926, "the return" which started the three-year period of limitation running? The question is, What did Congress intend by the words "the return" used in section 277 (a), subd. (1), Revenue Act of 1926, 26 USCA § 1057 (a) (1), as the basis for starting the statute of limitations running against the Commissioner and the government? That question will now be considered:

Section 227 of the Act of 1926 (26 USCA § 967) which relates back to January 1, 1925, provides for the filing of returns on the 15th day of the third month following the close of the fiscal year. Consequently it is urged that the return filed July 15, 1925 was a return under the Revenue Act of 1926 retroactively in effect on that date. However, section 239 of that Act (26 USCA § 991) provides that "every corporation subject to taxation *under this chapter* shall make a return, stating specifically the items of its gross income and the deductions and credits allowed *by this chapter*," etc. (Italics ours.) Can it be said that a return made before the Act of 1926 was passed requiring a return to be made in compliance with the Revenue Act of 1926 is "the return" contemplated by the Revenue Act of 1926 even if we assume that for certain purposes a return theretofore made could be utilized as a basis for assessing the taxes under the 1926 Act? It is clear that "the return" filed by the taxpayer before the Revenue Act of 1926 was passed could not be considered an effort on his part to comply with the not yet enacted law of 1926. It was a return under

and for the purpose of taxation in accordance with the law of 1924. This return provided the data (net income) for the taxation of the income for the eight months included in the calendar year 1924. Eight-twelfths of the tax thereon computed would be the amount taxable under the Revenue Act of 1926 for the period ending January 1, 1925. The return does not purport to show either the net income or the tax under the Act of 1926 for the four months included in the calendar year 1925. Unless the return filed July 15, 1925, can be considered a return under the Revenue Act of 1926, enacted more than six months later, but retroactively effective six months earlier, the statute of limitations has not run. It is difficult to see how the action of the taxpayer before the act requiring the action can be deemed a compliance with the statute or an act done under the statute not yet passed or applicable, notwithstanding its retroactive provisions.

The contention of the petitioner is in effect that inasmuch as a return was in fact made under the law then in force requiring such return (Revenue Act 1924) and inasmuch as such return contains all the data necessary for the Commissioner to make the assessment, under the Act of 1926 retroactively then in force, there was no necessity or occasion for a new return, and that the statute of 1926 requiring a return must be construed as retroactively applying to "the return" already filed. Consequently, it is argued that Congress having by its retroactive legislation recognized the return theretofore made during the calendar year 1925 as a return, the action of the Commissioner in adopting a rule requiring a new return is in conflict with the intent of Congress and therefore void, or, to the same effect, that the new return is not the return required by the law. These contentions are based upon the assumption that the Commissioner had only to add to the tax an additional tax of ⅙ of 1 per cent. on the net income shown by the return; consequently, that he could very well make the assessment without further data. One difficulty with this contention is that it ignores the history and the practice of the department acquiesced in by Congress from the first by which the taxpayer has been required not only to make return of the amount of his income and claim his deductions and credits under the applicable Revenue Act but also to estimate the amount of the tax due from the taxpayer. One of the purposes of the return as developed historically is the estimate of the tax to be paid by the taxpayer. Congress has repeatedly recognized such an estimate of the

tax by the taxpayer as a proper basis for payment and has provided an elaborate system for fixing the amount of the deficiency therein. For instance, the Revenue Act of 1918, § 250 (a), 40 Stat. 1082, providing for the payment of the income tax in installments shows that the act contemplates that the tax shall be computed by the taxpayer. The statute says:

§ 250 (b): "As soon as practicable after the return in filed, the Commissioner shall examine it. If it then appears that the correct amount of the tax is greater or less than that shown in the return, the installments shall be recomputed. * * * In such case if the return is made in good faith *and the understatement of the amount in the return* is not due to any fault of the taxpayer, there shall be no penalty because of such understatement. If the understatement is due to negligence on the part of the taxpayer, but without intent to defraud, there shall be added as part of the tax 5 per centum of the total amount of the deficiency," etc. (Italics ours.)

See, also, section 250 (a) (b) of the Act of 1921 (42 Stat. 264). The Revenue Act of 1924, § 273 (1), 26 USCA § 1047 (1) defines a deficiency, among other things, as "the amount by which the tax imposed by this chapter *exceeds the amount shown as the tax by the taxpayer* upon his return." That act (section 276 (a) (1), 26 USCA § 1056 and note) also provides that, "Where *the amount determined by the taxpayer* as the tax imposed by this chapter * * * *is not paid* at the time prescribed for its payment, there shall be collected, * * * " etc. (Italics ours.) Substantially the same provision was incorporated in the Revenue Act of 1926 § 276 (a) (1), 26 USCA § 1056 (a) (1).

In view of this established practice it would seem entirely reasonable that the Commissioner should require a new return under a newly enacted law where as result of that law there was an increased tax due from the taxpayer, and it is quite immaterial to this consideration whether or not the change involved is great or small because payment of the additional tax is and must be based upon a new return by the taxpayer. The Commissioner cannot determine the deficiency due to the changes made by the new law until he is ready to determine the proper assessment. That determination not only involves careful analysis of the return filed by the taxpayer, but in the case such as that at bar involving a gross income of over $5,000,000 and claimed deductions of over $3,000,000 would require very careful consideration

of the books and business of the corporation. That this process is one that requires much time is recognized by every act of Congress which, although it requires the Commissioner to promptly determine the tax, gives him several years in which to make the determination. Hence, the importance of the initial computation by the taxpayer.

In the companion case (C. C. A.) 69 F.(2d) 852, we have held that a return filed under the Revenue Act of 1918 could not be considered a return under the Revenue Act of 1921, if it did not show the deductions as authorized by the Act of 1921, although in the particular case involved the statutory deduction of $2,000 was the only change made in the return of the particular taxpayer. We have declined with all due respect to follow decisions to the contrary by co-ordinate courts. These decisions are pressed upon us here as a ground for reversing the action of the Board of Tax Appeals. It is not disputed by the Commissioner that the principle of those decisions is applicable to the case in hand. If by reason of the fact that the Commissioner by a mere computation applied to the return filed under the Revenue Act of 1918 can determine the proper tax levied by the Act of 1921 on petitioner's income, a new return is unnecessary, then a new return is unnecessary in the case at bar. Indeed, the decisions above referred to apply with more force to the case at bar where the only question involved is a matter of computation of a tax at a new rate than to a case where the question under consideration is a deduction which a statute expressly requires be shown by the taxpayer in his return as fixed by the law applicable to the taxation of the income shown in the return.

We base our conclusion in this case on the fact that by the uniform practice of the Treasury Department over a long period of years and by its decisions above referred to as well as by the express terms of the statute a return is required where an additional tax is imposed by the new Revenue Act. Consequently, we hold that regardless of the fact which we deem largely fortuitous that the return filed by the taxpayer in this particular case shows a gross income and a net income which is identical no matter whether the terms of the Revenue Act of 1924 or the terms of the Revenue Act of 1926 are applied, the fact that even in such a case a proper return will show an additional tax properly requires a return fixing the amount of such additional tax. This return was demanded by the Treasury Decisions requested by letter and complied with by the petitioner less than three years before the issuance of the deficiency letter.

We wish to make it clear that unless we are correct in holding that the decisions of our co-ordinate courts are erroneous this case as well as the companion case should be reversed.

Order affirmed.